[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10865

Non-Argument Calendar

_____

WILLIAM PAYNE,

Petitioner-Appellant,

*versus*

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:15-cv-01267-SDM-JSS

_____

Before NEWSOM, GRANT, and MARCUS, Circuit Judges.

PER CURIAM:

William Payne, a counseled former[1] Florida prisoner who served ten years' imprisonment after being convicted of trespass, criminal mischief, and possession of burglary tools, appeals the district court's denial of his § 2254 habeas petition, in which he argued, in Claim 4, that his trial counsel was ineffective for failing to investigate his competency and to request a competency hearing prior to trial. Responding to our certificate of appealability, Payne argues that the state post-conviction court unreasonably applied the prejudice standard established in *Strickland v. Washington*, 466 U.S. 668 (1984), and that, upon *de novo* review, he established a reasonable probability that he would have been found incompetent at the time of his trial. After careful review, we affirm.

We review *de novo* the district court's denial of a habeas corpus petition. *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir.

---

[1] According to the Florida Department of Corrections website, Payne was released from custody in May 2019. Nevertheless, he is still "in custody" within the meaning of 28 U.S.C. § 2254 and his appeal is not moot. *See, e.g.*, *Birdsell v. Alabama*, 834 F.2d 920, 921 (11th Cir. 1987) (discussing "in custody" requirement when a petitioner was released from prison and holding that a petitioner remains "in custody" after release from prison for a challenged sentence if the sentence expired before the application for habeas relief was fully adjudicated or while it was awaiting appellate review); *Minor v. Dugger*, 864 F.2d 124, 127 (11th Cir. 1989) (holding that a petitioner's case is not moot when there is a possibility that his conviction would be used to subject him to enhancement of a sentence in case of felony charges in the future).

2005).  In a habeas proceeding, we may affirm the district court's ruling on any ground supported by the record. *See Peoples v. Campbell*, 377 F.3d 1208, 1235–36 (11th Cir. 2004).

The Sixth Amendment provides criminal defendants the right to effective assistance of counsel.  U.S. Const., amend. VI; *Strickland*, 466 U.S. at 684–86.  To succeed on an ineffective-assistance-of-counsel claim, a petitioner must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense.  *Strickland*, 466 U.S. at 687.  To prove the prejudice prong under *Strickland*, he must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 694.  A reasonable probability is one "sufficient to undermine confidence in the outcome" of the trial.  *Id*.  It is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding.  *Id*. at 693.  Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quotations omitted).  Further, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994).

"The Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants."  *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995).  In a substantive incompetency claim, a petitioner must present "clear and convincing evidence" creating a "real, substantial

and legitimate doubt" as to his competence to stand trial to be entitled to a hearing. *Id.* (quotations omitted).

For habeas claims resolved in state court, we "review the last state-court adjudication on the merits." *Sears v. Warden GDCP*, 73 F.4th 1269, 1280 (11th Cir. 2023) (quotations omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a "highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotations and citation omitted); *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."). A federal court cannot grant habeas relief on a claim that was "adjudicated on the merits in State court proceedings" unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). When Supreme Court precedent does not address the issue or gives no clear answer to the question in an ineffective assistance of counsel claim under *Strickland*, "it cannot be said that the state court unreasonably applied clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quotations omitted, alterations adopted).

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). Thus, a state prisoner seeking federal habeas relief "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101 (quotations omitted).

If the state court unreasonably applied clearly established federal law, we do not defer to its denial of relief and, instead, review *de novo* the petitioner's claim. *Calhoun v. Warden, Baldwin State Prison*, 92 F.4th 1338, 1346 (11th Cir. 2024). In *Calhoun*, we concluded that a state supreme court's application of *Strickland* was not due AEDPA deference because the court used a more burdensome standard than *Strickland*. *Id*. at 1347–49. Similarly, in *Guardado*, we recently held that the Florida Supreme Court unreasonably applied *Strickland* prejudice standard regarding counsel's failure to challenge jurors by substituting a state case's heightened actual bias test for the reasonable probability test. *Guardado v. Sec'y, Fla. Dep't of Corr.*, 112 F.4th 958, 990 (11th Cir. 2024). After determining that the state court unreasonably applied *Strickland*'s prejudice prong, we conducted a *de novo* review of the record to determine if the petitioner was prejudiced by his counsel's failure to challenge jurors. *Id*. at 994.

When analyzing a claim of ineffective assistance under § 2254(d), our review is "doubly" deferential to counsel's performance. *Harrington*, 562 U.S. at 105. Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The *Strickland* dual prongs of deficient performance and prejudice apply to claims that counsel was ineffective for not adequately challenging the defendant's competency. *Lawrence v. Sec'y Fla. Dep't of Corr.*, 700 F.3d 464, 477 (11th Cir. 2012). We've held that the petitioner must show that counsel's actions fell below an objective standard of reasonableness and that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 477–79 (quotations and citation omitted). As for the prejudice prong, the petitioner is "required to show that there was a reasonable probability that he would have received a competency hearing *and* been found incompetent had counsel requested the hearing." *Id.* at 479; *see also Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) (explaining that, "[i]n order to demonstrate prejudice from counsel's failure to investigate [petitioner's] competency, petitioner has to show that there exists at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial" (quotations omitted)). In *Wingo*, a federal criminal case on direct appeal, we determined that a retrospective inquiry into a defendant's competency at a particular time is possible, if the "quantity and quality of available evidence [of the defendant's

competency at the time of the trial or guilty plea] is adequate to arrive at an assessment that could be labelled as more than mere speculation." *United States v. Wingo*, 789 F.3d 1226, 1238 (11th Cir. 2015) (quotations omitted).

In *Thompson*, Florida's Fourth District Court of Appeal affirmed the lower court's denial of a Rule 3.850 motion for postconviction relief that claimed, in part, that "trial counsel was ineffective in failing to request a competency evaluation and in failing to demand a competency hearing." *Thompson v. State*, 88 So. 3d 312, 316 (Fla. 4th Dist. Ct. App. 2012). The court noted that, while Florida courts recognized "narrow" claims of ineffective assistance of counsel for failure to raise a defendant's alleged incompetency, the legal standard that applied to such claims was "unsettled." *Id.* It saw no reason "why the standard should differ depending on whether the postconviction claim is couched as 'substantive incompetency' or as 'ineffective assistance of counsel.'" *Id.* at 318. So, it determined that "[t]he prejudice standard that applies to a typical claim of ineffective assistance of counsel, whether a reasonable probability exists that the outcome of the proceeding would differ, is ill-suited to a claim of alleged incompetency." *Id.* at 319. It explained that "[t]he focus of the prejudice inquiry is on actual prejudice, whether, because of counsel's deficient performance, the defendant's substantive due process right not to be tried while incompetent was violated." *Id.* It continued that, in order to establish prejudice, as with a substantive incompetency claim, the defendant must "set forth clear and convincing circumstances that

create a real, substantial and legitimate doubt as to the movant's competency." *Id.*

Here, the state post-conviction court unreasonably applied the prejudice standard in *Strickland* when it applied state law that required Payne to "set forth clear and convincing circumstances that create a real, substantial and legitimate doubt as to competency" for the reasonable probability test. 28 U.S.C. § 2254(d); *Strickland*, 466 U.S. at 687, 694; *Wright*, 552 U.S. at 126; *Guardado*, 112 F.4th at 990; *Thompson*, 88 So. 3d at 319.[2] This standard, which is found in the Florida state court's decision in *Thompson*, 88 So. 3d at 319, unreasonably placed a higher burden on Payne than we require in ineffective assistance of counsel claims -- that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." 28 U.S.C. § 2254(d); *Strickland*, 466 U.S. at 687, 694; *Guardado*, 112 F.4th at 994; *Lawrence*, 700 F.3d at 477–79; *Strickland*, 466 U.S. at 694.

But regardless, even when we apply the proper *Strickland* prejudice standard *de novo*, Payne still has not satisfied the *Strickland* test. *Calhoun*, 92 F.4th at 1347–49. To make the *Strickland* showing in this case, he needed to establish that "there was a reasonable probability that he would have . . . been found incompetent had counsel requested the hearing." *Lawrence*, 700 F.3d at 479;

---

[2] Because the state appellate court affirmed the post-conviction court's denial of post-conviction relief without explanation, we assume they agreed with the lower court's reasoning and refer to the lower court's discussion and findings. *Sears*, 73 F.4th at 1280.

23-10865              Opinion of the Court                    9

*see also Futch*, 874 F.2d at 1487; *Wingo*, 789 F.3d at 1238 (providing that a retrospective competency determination is possible when sufficient evidence exists from the relevant period so that the determination constitutes more than speculation).

The record evidence does not support this showing. For starters, Payne was evaluated by Dr. Henry Dee in 2007 -- about 18 months before trial in the instant case -- in an unrelated criminal matter. At that time, Dr. Dee found that Payne was incompetent in some regards, but that he was competent for trial. Dr. Dee explained that, on the one hand, Payne was "factually competent to proceed, meaning that he possesses the requisite knowledge to make him competent to proceed in the sense that he understands the functions of the various officers of the Court, the charges against him, and the possible consequences of being found guilty." But on the other hand, Dr. Dee found that "at this point he seems realistically not competent. He seems to be harboring a delusion regarding his attorney's intentions toward him. . . ." Along with these conclusions, Dr. Dee prepared an addendum to his evaluation deeming Payne's capacity "acceptable" for (1) appreciating the charges against him, (2) appreciating the nature and range of possible penalties, (3) understanding the adversarial nature of the legal process, (4) disclosing to counsel information pertinent to the proceedings, (5) manifesting appropriate courtroom behavior, and (6) testifying relevantly. After a competency hearing in January 2008, the court agreed with Dr. Dee that Payne was competent for trial. Payne was tried and acquitted of grand theft in 2008.

After his acquittal, Payne was arrested in the instant case and charged with one count of burglary of a structure, three counts of burglary of a conveyance, and possession of burglary tools. He was tried in June 2009, and although a competency hearing was not held before trial, there is evidence in the record indicating that Payne was competent to proceed at the time of this trial as well. Notably, the record reflects that Payne assisted and communicated with his counsel before and during his trial, relaying information about his past evaluation with Dr. Dee and asking to be evaluated; discussing his case before trial, including writing his counsel about his desire to review the transcripts and case law, asking her to file motions on his behalf, and contacting other assistant public defenders in the office to get certain things accomplished; testifying at his motion to suppress hearing, when he became a witness and was questioned by counsel and the trial judge, and not only answered appropriately and coherently, but was cooperative with counsel; and even participating in jury selection. Additionally, when Payne raised the issue of his mental health at sentencing, the trial court said that it had not noticed anything of concern concerning Payne's competency during pretrial proceedings, the jury trial, or the sentencing hearing, noting that "I don't believe there's any reason to think he's incompetent to stand trial. Certainly I can understand everything he says. He seems to know what's going on."

Nevertheless, the trial court ordered an evaluation of Payne to determine whether he was mentally competent to proceed to sentencing in the instant case and to continue with plea proceedings in yet a *third* criminal case. Following the entry of the order,

in late 2009, Payne was evaluated by Dr. Tracey Henley and Dr. Tracey Hartig.  At the subsequent competency hearing held in February 2010, the doctors testified that Payne was incompetent at the time they evaluated him in December 2009, when he was not taking his anti-psychotic medication.  But, importantly, both said that they could *not* opine that Payne was incompetent at the time of June 2009 trial in the instant case, nor was it clear whether Payne had been on his medication during the June 2009 trial.  Further, Dr. Hartig said that she had sufficient information from her interview to conclude that Payne was exaggerating some of his emotional symptoms.  At the end of the hearing, the court found "absolutely no proof whatsoever" that Payne had been incompetent during the trial of the instant case and, therefore, that no basis existed to set aside the verdict or mitigate the sentence in the instant case.  However, based on his condition in 2010, the court found that he was incompetent to proceed with the plea in the third case.

In short, the record contains no opinion from any expert that Payne was incompetent at the time of the June 2009 trial, and it also contains evidence showing that he assisted his attorney in his defense.[3]  In these circumstances, we cannot say that there was a reasonable probability that, but for his counsel's failure to request a hearing on his competency, he would have been found to be

---

[3] Despite the court's finding that Payne was incompetent to proceed in the third case -- for which the plea colloquy took place after the trial in the instant case -- this finding does not establish that, retrospectively, there was "a reasonable probability that he would have . . . been found incompetent had counsel requested [a competency] hearing" in this case.  *Lawrence*, 700 F.3d at 479.

12                          Opinion of the Court                          23-10865

incompetent at the time of his trial.  Accordingly, we affirm the denial of his habeas corpus petition.

**AFFIRMED.**